IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,       :
    Plaintiff,

v.       :       Case No. 3:19-cr-45(3) and (4)

GENE TALLEY, *et al.*,       JUDGE WALTER H. RICE

    Defendants.       :

---

DECISION AND ENTRY OVERRULING DEFENDANT SYREETA SCRUGGS' MOTION TO SUPPRESS (DOC. #36) AND DEFENDANT BRIANNA REID'S MOTION TO SUPPRESS STATEMENTS (DOC. #44)

---

Defendants Syreeta Scruggs and Brianna Reid were indicted, along with three others, on charges of conspiracy to possess with intent to distribute in excess of one kilogram of a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 846.

This matter is currently before the Court on two motions: (1) Defendant Syreeta Scruggs' Motion to Suppress, Doc. #36; and (2) Defendant Brianna Reid's Motion to Suppress Statements, Doc. #44. Both motions are fully briefed. The Court held an evidentiary hearing on these motions on September 23, 2019. Doc. #55.

I. **Background and Procedural History**

Special Agent Rob Mullins, of the Internal Revenue Service, and Special Agent Dave Ashley, of the Drug Enforcement Agency, interviewed Syreeta Scruggs and Brianna Reid as part of an ongoing drug trafficking investigation. Mullins and Ashley interviewed Reid on August 24, 2016, at a county jail in Greenwood, West Virginia, where she was being held on an unrelated charge. They interviewed Scruggs at the Franklin County Probation Department on September 1, 2016, after she met with her Probation Officer. The agents did not read Scruggs or Reid their *Miranda* rights prior to questioning them. During those interviews, each woman made certain incriminating statements which they now seek to suppress.

II. **Relevant Law**

At issue is whether Scruggs and Reid were "in custody" such that the agents were required to read them their *Miranda* rights prior to questioning them. *See Miranda v. Arizona*, 384 U.S. 436 (1966) (holding that, in order to protect the Fifth Amendment right against self-incrimination, law enforcement officers must give certain warnings before interrogating individuals who have been placed in custody).

As the Supreme Court noted in *Howes v. Fields*, 565 U.S. 499 (2012), "'custody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Id.* at 508. Examining all of the

2

circumstances surrounding the interrogation, the question is whether a reasonable person would have felt that he or she could terminate the interrogation and leave. *Id.* Relevant factors may include: (1) the location of the questioning; (2) the duration of the questioning; (3) statements made during the interview; (4) the presence or absence of physical restraints during the interview; and (5) the release of the interviewee at the end of the questioning. *Id.*

### III. Syreeta Scruggs

Having reviewed all evidence relevant to the circumstances surrounding Syreeta Scruggs' interview at the Franklin County Probation Office, the Court concludes that hers was not a custodial interrogation subject to the requirements of *Miranda.*

Special Agents Rob Mullins and Dave Ashley interviewed Syreeta Scruggs in a conference room at the Franklin County Probation Office. Because their previous efforts to contact her at her residence had been unsuccessful, they contacted her Probation Officer Jason Otterbacher. He told them that she was scheduled to first report to him on September 1, 2016, and offered to let them speak with her then. Doc. #55, PageID##289, 314.

Scruggs arrived at the Probation Office and met with Otterbacher as planned. He then told her that there were some gentlemen who wanted to talk to her. He escorted her back to the conference room where Mullins and Ashley were waiting. *Id.* at PageID##290-291, 298, 304. Scruggs was not physically

3

restrained at any time. *Id.* at PageID#290. Otterbacher left after Mullins and Ashley introduced themselves to Scruggs. *Id.* at PageID#291. He did not lock the conference room. *Id.* at PageID#295. The agents interviewed Scruggs for approximately 30-40 minutes. *Id.* at PageID#307. She refused to answer some of their questions, and ultimately told them that she no longer wanted to speak to them, at which point she walked out of the conference room and left the building. *Id.* at PageID##309-10, 312.

The location of Scruggs' interview may be deemed somewhat intimidating. It was conducted in the conference room in a secured portion of the Probation Office. She was escorted there by her Probation Officer during her first visit with him and had no advance notice that Mullins and Ashley were waiting for her. Nevertheless, Otterbacher did not remain in the room, Scruggs was not physically restrained, and the door to the conference room remained unlocked at all times. *Id.* at PageID#307. She walked into the room of her own volition. *Id.* at PageID#291. Moreover, the interview lasted only 30-40 minutes, a duration that is typically viewed as non-custodial. *See United States v. Panak*, 552 F.3d 462, 467 (6th Cir. 2009).

Otterbacher did not tell Scruggs that she was required to speak to the agents before she left or indicate that she would suffer any adverse consequences if she refused to do so. But neither did he tell her that she was free to leave without speaking to them. Doc. #55, PageID##290-91, 298. Likewise, the federal agents did not tell her that she was required to speak to them, but neither

4

did they tell her that she was free to leave at any time. *Id.* at PageID#315.  They did not tell Scruggs that she was under arrest.  Nor did they threaten to charge her with any crimes during the interview, even when she refused to answer all of their questions.  *Id.* at PageID##307, 309.

Had Otterbacher, Mullins or Ashley explicitly told Scruggs that she was not required to talk to them and was free to leave at any time, it is unlikely that Scruggs could be deemed to be "in custody." *Panak*, 552 F.3d at 468.  However, the absence of such instructions does not automatically "transform[] the meeting into an arrest-like situation." *Id.*  As the Sixth Circuit noted in *Panak*, "[i]t would be strange, indeed, to say that a telltale sign of whether an individual must be Mirandized is whether the officer gave the individual one of the *Miranda* warnings—that she need not answer the questions." *Id.* at 467.  All relevant circumstances surrounding the interview must be considered.

In the Court's view, given the circumstances presented here, a reasonable person in Scruggs' position would have felt free to leave the interview.  Scruggs clearly felt that way, given that she unilaterally terminated the interview after 30-40 minutes, got up, walked out of the conference room and left the building.

Having considered all relevant factors, the Court concludes that Scruggs was not "in custody" within the meaning of *Miranda* when questioned by the agents.  Accordingly, no *Miranda* warnings were required.  The Court therefore OVERRULES Defendant Scruggs' Motion to Suppress the statements she made during that interview.  Doc. #36.

5

### IV. Brianna Reid

Special Agents Rob Mullins and Dave Ashley interviewed Brianna Reid mid-day in the visitation room at a county jail in West Virginia, where she was being held on unrelated charges. They did not warn her that they were coming. The visitation room had a sliding door with glass windows. Mullins testified that she was escorted into the room by one of the guards, who then left. Reid was not physically restrained in any way and neither agent was armed. Doc. #55, PageID##324, 326-29, 347. The door to the visitation room was not locked. *Id.* at PageID#358.

The agents did not threaten Reid with arrest. In fact, at that point, she was merely a witness, not a suspect. *Id.* at PageID##329-30, 342, 350. They questioned her for approximately two hours. *Id.* at PageID##331. The agents did not tell Reid that she had to stay in the room and answer their questions. On the other hand, neither did they tell her that she was under no obligation to answer their questions or that she was free to terminate the interview and leave whenever she wanted. *Id.* at PageID##328-29, 349-50, 359.

On two occasions during the interview, Reid opened the visitation room door and stepped out into the hall to speak to the guards about her lunch, which she ate during the interview. *Id.* at PageID##333-34, 358. When the interview concluded, Mullins gave Reid his contact information. She then walked out of the room with the agents and waved down a guard to be escorted back to her cell.

6

Shortly after the interview, Reid contacted Mullins via email indicating that she was willing to provide more information. *Id.* at PageID##337-38, 349.

Reid argues that, under the circumstances presented here, she should be deemed to have been "in custody" such that *Miranda* warnings were required. The Court rejects this argument.

The fact that Reid was already in custody on unrelated charges when she was interviewed is not dispositive. In *Howes*, the Supreme Court held that "imprisonment alone is not enough to create a custodial situation within the meaning of *Miranda*." 565 U.S. at 511. The Court noted that: (1) "questioning a person who is already serving a prison term does not generally involve the shock that very often accompanies arrest"; (2) "a prisoner . . . is unlikely to be lured into speaking by a longing for prompt release"; and (3) "a prisoner . . . knows that the law enforcement officers who question him probably lack the authority to affect the duration of his sentence." *Id.* at 511-12. Pulling a prisoner aside for questioning "does not necessarily convert a 'noncustodial situation . . . to one in which *Miranda* applies.'" *Id.* at 512 (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). The Court must consider all of the circumstances surrounding the interrogation. *Id.* at 514.

In *Howes*, the prisoner was questioned for five to seven hours about allegations of illegal sexual conduct unrelated to the crime for which he was serving his sentence. He was not told that he could refuse to speak with the deputies but was told that he was free to leave and return to his cell whenever he

7

wanted. One of the deputies used a "very sharp tone" and profanity in his questioning. Nevertheless, the prisoner was not physically restrained or threatened, he was interviewed in a comfortable conference room, was offered food and water, and the door to the conference room was sometimes left open. The Court concluded that, under these circumstances, he was not "in custody" within the meaning of *Miranda*." 565 U.S. at 517.

The length of Reid's interview, approximately two hours, tends to favor finding that she was "in custody." Nevertheless, this can be dispelled by other factors. *Id.* at 515-16. *See also United States v. Holt*, 751 F. App'x 820, 824 (6th Cir. 2018); *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004). In this case, the other factors warrant against a finding that Reid was "in custody" such that the agents were required to give *Miranda* warnings prior to questioning her.

Like the prisoner in *Howes*, Reid was interviewed in an unlocked room at the jail. She was not physically restrained and, in fact, on two occasions she got up and walked out of the room to summon the guards concerning her lunch. As explained earlier, although the agents did not inform her that she was not required to answer their questions or that she could terminate the interview at any time, this fact is not dispositive. *See Panak*, 552 F.3d at 467. It is significant that the agents did not tell Reid that she was under arrest or that she was a suspect in a crime. At that time, she was just a witness. The agents explained that they were simply there to ask about a vehicle that was registered in her name. Doc. #55, PageID#328. Mullins described the interview as "a good conversation." Although

8

he confronted her when she told him things that did not add up, he denied yelling at her. *Id.* at PageID#335.[1] When the interview was over, Reid left with the agents and was escorted back to her cell.

Having considered all relevant factors, the Court concludes that Reid was not "in custody" within the meaning of *Miranda* when questioned by the agents. Given the nature and the purpose of the questioning, this encounter does not rise to the level of a custodial interrogation for which *Miranda* warnings are required. The Court therefore OVERRULES Defendant Reid's Motion to Suppress the statements she made during that interview. Doc. #44.

V. **Conclusion**

For the reasons set forth above, the Court OVERRULES the Motions to Suppress filed by Defendants Syreeta Scruggs, Doc. #36, and Brianna Reid, Doc. #44.

Date: January 14, 2020

        *Walter Rice*
WALTER H. RICE
UNITED STATES DISTRICT JUDGE

---

[1] At this point in the interview, the agents warned Reid that she could be charged with a crime if she lied to a federal agent. Doc. #55, PageID##332, 335.